UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK TUBBS,

        Plaintiff,                                    Hon. Wendell A. Miles

v.                                                              Case No. 1:05-CV-603

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years of age at the time of the ALJ's decision.  (Tr. 14).  He successfully completed high school and worked previously as a mechanic and assembler.  (Tr. 14, 68, 73, 79-83).

Plaintiff applied for benefits on May 30, 2003, alleging that he had been disabled since December 5, 2001, due to back pain. (Tr. 49-51, 76).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 21-45).  On October 26, 2004, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Randall Nelson.  (Tr. 225-75).  In a written decision dated January 14, 2005, the ALJ determined that Plaintiff was not disabled.  (Tr. 14-20).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-5).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **MEDICAL HISTORY**

In 1998, Plaintiff was involved in a motor vehicle accident in which he suffered a concussion. (Tr. 114). Following this accident Plaintiff began experiencing headaches triggered by "stress, sunlight, and lack of sleep." Plaintiff reported that he suffered headaches in "clusters," during which he may experience daily headaches for "a couple of weeks" followed by a period of several weeks in which he suffers no headaches. Plaintiff reported that medication was "helpful" in treating his headaches. *Id.*

On May 30, 2001, Plaintiff was examined by Dr. Catherine Powers. (Tr. 119). Plaintiff reported that when he is able to get "more sleep" he does not experience headaches. Plaintiff reported that his condition "continues to improve" and that he had not experienced an "extremely severe headache" in six months.

Plaintiff stopped working on December 5, 2001, because he was "laid off." (Tr. 76).

On February 20, 2002, Plaintiff reported that his headaches were "fairly well controlled" with medication. (Tr. 132).

X-rays of Plaintiff's lumbosacral spine, taken on May 21, 2002, revealed "mild changes of lumbar spondylosis." (Tr. 136). An MRI examination of Plaintiff's lumbosacral spine, performed the same day, revealed disc herniation at L4-5 as well as "multilevel degenerative disc changes" at L2-L4 and L5-S1. (Tr. 135).

On July 1, 2002, Plaintiff was examined by Dr. Randolph Russo. (Tr. 137-38). Plaintiff reported that he was experiencing back pain which radiated into his left lower extremity. (Tr. 137). Plaintiff walked with a normal gait and an inspection of his lumbar spine revealed it to be in "normal position." (Tr. 138). Plaintiff exhibited "full" flexion and extension and was able to

"touch his toes with no significant pain." He exhibited no evidence of radicular pain. Plaintiff demonstrated full range of hip motion and Fabere's sign was negative.[1] Straight leg raising produced "discomfort" but no evidence of radicular symptoms. Dr. Russo concluded that Plaintiff's back pain should be treated with conservative medication, physical therapy, and an exercise regimen. *Id.*

On July 29, 2002, Plaintiff participated in a consultive examination performed by Dr. Benjamin Bruinsma. (Tr. 129-31). Plaintiff reported that he was experiencing lower back pain which radiated into his left lower extremity. (Tr. 130). Plaintiff reported that his back pain was exacerbated by "flexion, any lifting at floor level, and lifting at waist level greater than 40 pounds." Plaintiff reported that his "hobbies include target shooting, fixing motorcycles, and fixing houses." Plaintiff further reported that he was "active, including working on motorcycles, cleaning his barn, cleaning up his yard, and mowing his yard."

Plaintiff was in no apparent distress and walked with a stable gait. His spine was "in normal alignment" and aside from "discomfort with flexion" Plaintiff exhibited full range of motion. *Id.* Straight leg raising was negative and palpation of Plaintiff's lower back produced no evidence of pain. (Tr. 130-31). Plaintiff exhibited 5/5 strength and there was no evidence of neurological impairment. *Id.* Plaintiff was diagnosed with lumbar spondylosis and L4-5 herniation with no evidence of radiculopathy. (Tr. 131). Dr. Bruinsma recommended that Plaintiff participate in physical therapy. The doctor imposed on Plaintiff the following restrictions: (1) no lifting below waist level, (2) no repetitive flexion, and (3) Plaintiff can lift at waist level 30 pounds infrequently

---

[1] Fabere's sign is a test used to determine whether a patient suffers from arthritis of the hip joint. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* P-81 (Matthew Bender) (1996).

and 10 pounds frequently. *Id.* Plaintiff responded well to physical therapy and Dr. Russo concluded that "aggressive medical interventions" were not warranted. (Tr. 155-56).

On January 23, 2003, Plaintiff was examined by Dr. Russo. (Tr. 159). Plaintiff reported that his leg pain has "improved drastically" and that he experiences only "fleeting back pain." An examination revealed that Plaintiff was neurologically intact with negative dural tension signs. Dr. Russo concluded that Plaintiff did not require aggressive medical intervention. *Id.*

Following a May 7, 2003 examination, Dr. Russo reported that Plaintiff was "stable, and does not require more aggressive medical care." (Tr. 176).

On July 6, 2003, Plaintiff completed a report regarding his activities. (Tr. 87-94). Plaintiff reported that on a typical day he showers and then "goes out to [the] barn" to "feed [and] water" his animals. (Tr. 88). He then "putter[s] around" or "tr[ies] to do something." Later in the evening he eats dinner and watches television. *Id.* Plaintiff reported that he mows his grass (with a riding lawn mower) and goes shopping. (Tr. 90). Plaintiff also reported that he enjoys repairing guns and participating in target sports. (Tr. 91).

On October 2, 2003, Plaintiff was examined by Dr. Peter Herkner. (Tr. 190-91). Plaintiff reported that he was experiencing pain in his right knee. (Tr. 190). An examination of Plaintiff's knee was unremarkable. (Tr. 191). An MRI of Plaintiff's right knee revealed mild to moderate degenerative changes. (Tr. 188-89). On November 3, 2003, Plaintiff reported that he recently began taking "shark cartilage" tablets which improved his knee pain. (Tr. 186).

On October 3, 2004, Plaintiff completed a report regarding his activities. (Tr. 106-11). Plaintiff reported that on a typical day he performs a "list of things," takes care of his dogs, "putter[s] around in [the] barn," drinks a few beers, visits with people who stop over, and makes

6

dinner. (Tr. 106). Plaintiff also reported that he likes to attend flea markets, "fix and build things," repair guns, and participate in target sports. *Id.* Plaintiff reported that he drives, cooks, performs yard work, shops, reads, talks on the telephone, watches television, and cares for his personal needs. (Tr. 108-09).

At the administrative hearing Plaintiff testified that he could walk one-quarter mile, sit for "about" 30 minutes, and lift 25-30 pounds from waist level. (Tr. 243-44).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[2]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) a back disorder and (2) headaches. (Tr. 15). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 18-19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

#### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) he can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds, and (2) he can only occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Randall Nelson.

The vocational expert testified that there existed approximately 27,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 272). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d

9

1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold). The vocational expert also testified that if Plaintiff were further limited in that he could not lift below waist level, bend repetitively at the waist, or use foot pedals there still existed 10,000 jobs which he could perform. (Tr. 272-73).

### a. The ALJ Properly Evaluated Plaintiff's Impairments

As noted above, Plaintiff reported experiencing right knee pain. The ALJ determined, however, that Plaintiff's right knee impairment was not severe. (Tr. 15). Plaintiff asserts that the ALJ improperly assessed the severity of his right knee impairment.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment does not constitute reversible error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Ortiz-Rosado v. Comm'r of Soc. Sec.*, 2001 WL 700835 at *1 (6th Cir., June 12, 2001).

Here, the ALJ determined that Plaintiff suffered from severe impairments at step two of the sequential analysis and continued with the remaining steps thereof, noting that he gave "careful consideration" to "the entire record." (Tr. 19). This sufficiently indicates that the ALJ

properly considered the combined effect of Plaintiff's various impairments. *See Loy v. Sec'y of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589, 591-92 (6th Cir. 1987)).

Thus, even if it is assumed that the ALJ erred in failing to find that Plaintiff suffered from a severe knee impairment, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

The medical evidence, as well as Plaintiff's extensive activities, supports the ALJ's conclusion that Plaintiff's knee impairment was less than severe.

### b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 27,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: November 13, 2006        /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge